UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

LA'VANTAY LEE WOODEN,                )
                                     )
                    Plaintiff,       )
                                     )
            v.                       )       No. 1:25-cv-02005-JRO-MG
                                     )
FORRESTALL Sheriff,                  )
TAYBIOR Captain,                     )
BOSTOCK Major,                       )
MIDDLETON Supervisor,                )
TANGY Wellpath Nurse,                )
FLORES Supervisor,                   )
WORD Deputy,                         )
BERTHELETTE Supervisor,              )
DUNLAP Deputy,                       )
                                     )
                    Defendants.      )

**ORDER SCREENING COMPLAINT AND DIRECTING FURTHER
PROCEEDINGS**

Plaintiff La'Vantay Lee Wooden is a prisoner currently incarcerated at the

Marion County Adult Detention Center (the "Jail"). He filed this civil action

against several Jail officials for violations of federal law. Because the plaintiff is

a "prisoner," this Court must screen the complaint before service on the

defendants. 28 U.S.C. § 1915A(a), (c).

Additionally, Wooden has filed a motion for assistance with recruiting

counsel. Dkt. 15. For the reasons set forth, that motion is **DENIED** without

prejudice.

**I. SCREENING STANDARD**

When screening a complaint, the Court must dismiss any portion that is

frivolous or malicious, fails to state a claim for relief, or seeks monetary relief

against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. THE COMPLAINT

Wooden's factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023). He pursues claims against eleven Jail officials: Sheriff Kerry Forestal[1]; Captain Taybior; Major Bostock; Major Middleton; Nurse Tangy; Sergeant Flores; Deputy Ward; Supervisor Berthelette; Deputy Dunlap; Deputy Jaker; and Deputy Hughes.

---

[1] Mr. Wooden spells the Sheriff's surname as "Forrestall." The Court takes judicial notice of the correct spelling of his name. *See Marion County Sheriff's Office*, "Sheriff Kerry J. Forestal," https://www.indy.gov/agency/marion-county-sheriffs-office (last visited Apr. 22, 2026).

2

The complaint alleges that Wooden was booked into the Marion County Adult Detention Center on May 16, 2025.[2] He notified staff that he was still healing from a tibia and ankle fracture in his right leg and that he therefore had a metal rod and pins in his leg and ankle. He also informed staff of bullet fragments in his left thigh and left pelvis. Wooden was placed in general population.

On May 30, 2025, Wooden was assaulted by multiple inmates for approximately seven minutes. Deputy Dunlap and Supervisor Berthelette were among those who observed the attack, but they did nothing to stop it. Wooden injured his head, face, leg, foot, and body. The pins in his right leg caused pain which prevented his leg from bearing weight. The attack also caused pain and stiffness in his neck, back, and hip. Wooden notified officers of the attack and was taken to see medical staff. An x-ray was administered, and it showed that the pin in his leg was bent and that something was wrong with his neck and back. Despite his pain and the irregular x-ray, he was cleared to return to his housing unit.

Wooden was transferred from the medical wing by wheelchair. During transport, he notified the escorting officers that he was feeling dizzy and was going to lose consciousness. Moments later, he collapsed out of the wheelchair.

---

[2] While Mr. Wooden does not specify a year for his booking, because he describes a subsequent event as occurring in the year 2025, dkt. 1 at 5, it appears that this allegation and others without listed years are pled to have occurred in 2025. This inference is supported by the fact that Mr. Wooden was charged on May 16, 2025, in case number 49D28-2505-F4-015648 in Marion Superior Court 24. *See* Case Summary, case number 49D28-2505-F4-015648, available at mycase.in.gov.

Wooden, now bleeding above his right eyebrow, was lifted off the ground by officers. The officers explained to Wooden that he had hit his head, that he would be alright, and that they were transporting him to a holding cell. Wooden requested further medical treatment multiple times, and the requests were denied.

Wooden was brought to the holding cell, and he spent the night on a mat on the ground. Throughout the night, officers would kick Wooden while doing their rounds. One officer lifted one end of Wooden's mat—while he was lying on it—to their waist and then dropped the mat. This caused Wooden pain. At approximately 3:30 a.m., five officers, including Sergeant Flores and Deputy Ward, forced Wooden up and off the mat. Wooden rose slowly due to the pain. He was handcuffed behind his back and forced to walk down the hall, a physical struggle for him. Consequently, the officers carried him and, when they got tired of doing so and upon Wooden's pleas of pain, called for a wheelchair. He was then taken to the medical wing.

Wooden was evaluated by medical staff. During the evaluation, Deputy Ward kept hurting Wooden by pressing his knee against Wooden's back and adjusting his restrained arms. Wooden told medical staff and Sgt. Flores that he feared for his life and wanted to be placed in the infirmary until he recovered and could defend himself. Instead, he was cleared to return to his housing unit.

Back at his cell, officers roughly placed Wooden onto his bunk with one officer pressing his knee against Wooden's back. As they left, the officers called Wooden a "snitch" and a "rat" for wanting to press charges.

4

Twenty minutes after the officers left, Wooden was assaulted by inmates. No officer or other staff member responded to the attack. He tried to make his way to the emergency button to call for help. Wooden did not receive medical attention from this assault.

On June 16, 2025, Wooden was threatened by multiple inmates. The next day, he requested protective custody placement via the kiosk system.

On June 18, 2025, Deputy Hughes and another officer brought lunch to Wooden's dormitory. Wooden was locked in his cell, and they passed his cell without providing him food. The officers continued delivering food, had one lunch left at the end, and still elected not to provide Wooden his meal.

At some point, Wooden was reclassified from administrative housing to dormitory housing. He was seen by medical staff on July 3, 2025, after this reclassification. While he was supposed to move into a different dormitory, he was moved into the dormitory where he had been assaulted on May 31. Wooden was still relying on a wheelchair at this point. Upon his return to the dormitory, the assailant inmate confronted him, and Wooden remained by the front door out of fear for his life.

Wooden was eventually moved to a different dormitory. During the transfer, the officer pushing Wooden's wheelchair rammed him into a metal stool, causing pain to and bleeding from his right leg. Wooden, on the ground, requested medical attention and an incident report. The requests were denied, and the officer instructed Wooden to get off the ground or be tased. Someone

5

eventually helped Wooden stand up, and he then filed both a grievance and a medical request.

On July 31, 2025, Wooden informed officers that he wanted to transfer cells, and the officers acted as if they did not hear him. At the time, he expressed that he had no problem will his cellmate. He was subsequently assaulted by his cellmate. Wooden's leg was further injured, officers arrived, and he was seen by medical staff. He expressed his ongoing leg, neck, back, and shoulder pains and his fears for his life to nurses and officers. He was medically cleared and brought back to a cell, although it is unclear whether this was a new or the same cell.

A disciplinary hearing was set regarding the July 31 attack for August 4, 2025. On his way to the hearing, Wooden's leg gave out, causing him to fall. He requested medical attention, and two officers, including Deputy Ward, responded by calling for backup, threatening Wooden, and ordering him to return to his cell. Wooden asked for help up because of his physical state, and multiple officers restrained him in a hogtie position, lifted him off the ground, and threw him onto the ground of his cell.[3] Then, a knee was pressed against his back, his arms were twisted, and he was punched and kicked. His disciplinary hearing was not rescheduled, and he was found guilty and sanctioned outside his presence. Among Wooden's sanctions is a loss of phone privileges, preventing him from contacting his attorney regarding his open criminal case.

---

[3] It is not clear if Deputy Ward was present for the use of force incident. *See* dkt. 1 at 5 (describing Deputy Ward and another officer "call[ing] for backup & threat[ening] [Mr. Wooden] to get up & go back to the cell" and then describing "other deputies" lifting Mr. Wooden into his cell).

On August 12, 2025, officers removed Wooden from his cell and handcuffed him to escort him to the medical wing. Wooden had to hop due to his continued leg pain, and he fell multiple times along the way due to his injuries. Medical staff cleared Wooden, and, upon his asking why the medical appointment occurred, he learned that he was being moved to suicide watch without explanation. He was taken to a room where the officers removed Wooden's clothes. Wooden complied with orders and felt humiliated being naked. No report on this incident was ever written.

Throughout these events, Wooden filed many grievances and request slips.

### III. DISCUSSION OF CLAIMS

Applying the screening standard to the factual allegations in the complaint, certain claims are dismissed while other claims shall proceed as submitted. As an initial matter, based on Wooden's allegation that he was booked into the Marion County Jail on May 16, 2025, and the Court judicially noticing that Wooden was charged in a new criminal case on that same date, the Court understands that Wooden was a pretrial detainee at all relevant times. *See* Case Summary, 49D28-2505-F4-015648, available at mycase.in.gov. Accordingly, his claims are governed by the due process clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (holding that the reasonableness standard established in *Kingsley*

*v. Hendrickson*, 576 U.S. 389 (2015), applied to all claims related to pretrial detainees' conditions).[4]

First, all claims against Sheriff Forestal, Captain Taybior, Major Bostock, Major Middleton, Nurse Tangy, and Deputy Jaker are **dismissed** for failure to state a claim upon which relief may be granted. Although these parties are listed in the case caption and list of defendants, Wooden does not mention these defendants in the narrative of the complaint. "Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction to be given pro se complaints." *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) (citation omitted); *see also Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation.") (internal quotation omitted).

Second, all claims against Deputy Hughes are **dismissed** for failure to state a claim upon which relief may be granted. The only allegation against Deputy Hughes is that he deprived Wooden of one meal. To state a conditions claim under the Fourteenth Amendment, Wooden must be subjected to conditions that "were sufficiently serious as an objective matter, meaning 'that they den[ied] the inmate the 'minimal civilized measures of life's necessities,' creating an excessive risk to the inmate's health and safety." *Thomas v.*

---

[4] If this inference is incorrect and Mr. Wooden was indeed a convicted prisoner, any claim that the Court determines is viable will proceed under the Eighth Amendment.

*Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (quoting *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017)) (additional internal citations omitted); *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015) (observing that for both convicted prisoners and pretrial detainees, "the alleged conditions must be objectively serious enough to amount to a constitutional deprivation[ ]"). The denial of a single meal does not meet that standard. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (occasionally missing breakfast does not state a constitutional claim).

Finally, all claims related to the excessive force incident on August 4, 2025, are **dismissed**. As an initial matter, it is not clear if Deputy Ward participated in this incident, or if he had left the scene and other officers assaulted Wooden. Regardless, any claims related to events on this date are misjoined from the claims that stem from Wooden's allegations of May 30 and 31, 2025.[5] Plaintiffs cannot treat a single federal complaint as a sort of general list of grievances. *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the [Prison Litigation Reform Act's] fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies."). Federal Rules of Civil Procedure 18 and 20 guide the Court's analysis. Rule 20(a)(2) permits a plaintiff to join defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law

---

[5] This would include claims and allegations related to Mr. Wooden missing his disciplinary hearing and receiving sanctions that affected his communication with his defense attorney.

or fact common to all defendants will arise in the action." "[M]ere overlap between defendants is not enough." *Thompson v. Bukowski*, 812 F. App'x 360, 363 (7th Cir. 2020). Once Rule 20 is satisfied, "[a] party asserting a claim . . . may join, as independent or alternate claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a); *UWM Student Assoc. v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (court must apply Rule 20 before Rule 18). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).  The August 4, 2025, incident seemingly involved different correctional officers and occurred months after the initial assault and related lack of medical care.

If Wooden wants to pursue claims related to the August 4 incident, he may file a separate complaint.  At this time, there is no reason for the Court to sever these claims into a new case because Wooden does not name any officers as being involved except for possibly Deputy Ward.  *Colbert*, 851 F.3d at 657.  Nor is he "at risk of statute of limitations consequences" given that the events occurred less than a year ago.  *Dorsey v. Varga*, 55 F.4th 1094, 1107 (7th Cir. 2022).  If Wooden files a new complaint, he will be responsible for the filing fee, and the Court will screen the complaint under 28 U.S.C. § 1915A(b).

The claims which **shall proceed** are the following:

- Fourteenth Amendment failure to protect claims against Sergeant Flores, Supervisor Berthelette, and Deputy Dunlap;

- Fourteenth Amendment unreasonable medical care claim against Sergeant Flores; and

- Fourteenth Amendment excessive force claim against Deputy Ward.

These claims all stem from Wooden's allegations of May 30 and 31, 2025.

This summary of claims includes all of the viable claims identified by the Court. All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through June 12, 2026**, in which to file a motion to reconsider the screening order.

### IV. MOTION FOR ASSISTANCE WITH RECRUITING COUNSEL

On February 18, 2026, Wooden filed a motion for assistance with recruiting counsel. Dkt. 15. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a *pro bono* assignment in every *pro se* case. *See Watts v. Kidman*, 42 F.4th 755, 764 (7th Cir. 2022) (explaining that courts must be careful stewards of the limited resource of volunteer lawyers); *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655-56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682. Wooden has not indicated whether he has attempted to contact any attorneys with requests for representation. Accordingly, the Court finds that he has not made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. *Thomas v. Anderson*, 912 F.3d 971, 978 (7th Cir. 2019) (because plaintiff did not show that he tried to obtain counsel on his own or that he was precluded from doing so, the judge's denial of these requests was not an abuse of discretion). Wooden's motion for assistance with recruiting counsel, dkt. 15, is **denied** without prejudice. The Court will remain alert to changes in circumstances that may warrant reconsideration of the motion. In the interim, Wooden must file any renewed motion on the form motion for assistance with recruiting counsel included with his copy of this Order.

## V. CONCLUSION AND SERVICE OF PROCESS

The claims which **shall proceed** are the following: Fourteenth Amendment failure to protect claims against Sergeant Flores, Supervisor Berthelette, and Deputy Dunlap; a Fourteenth Amendment unreasonable medical care claim against Sergeant Flores; and a Fourteenth Amendment excessive force claim against Deputy Ward. All other claims have been dismissed. If Plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through June 12, 2026**, in which to file a motion to reconsider the screening order. Plaintiff's motion for assistance with recruiting counsel, dkt. [15], is **denied**.

The **clerk is directed**, pursuant to Fed. R. Civ. P. 4(c)(3), to issue process to defendants Flores, Ward, Berthelette, and Dunlap in the manner specified by Fed. R. Civ. P. 4(d). Process shall consist of the complaint, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to terminate "FORRESTALL", "TAYBIOR", "BOSTOCK", "MIDDLETON", "TANGY", and "WORD" as defendants on the docket. The **clerk is directed** to add "WARD *Deputy*" as a defendant on the docket.

The **clerk is directed** to include a form motion for assistance with recruiting counsel with Plaintiff's copy of this Order.

13

Nothing in this Order prohibits the filing of a proper motion pursuant to Fed. R. Civ. P. 12.

**SO ORDERED.**

Date: 5/13/2026

_____

Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

LA'VANTAY LEE WOODEN
2511004
MARION COUNTY JAIL
MARION COUNTY JAIL
ADC Mail Room
695 Justice Way
Indianapolis, IN 46203

SERGEANT FLORES
MARION COUNTY ADULT DETENTION CENTER
695 Justice Way
Indianapolis, IN 46203

DEPUTY WARD
MARION COUNTY ADULT DETENTION CENTER
695 Justice Way
Indianapolis, IN 46203

SUPERVISOR BERTHELETTE
MARION COUNTY ADULT DETENTION CENTER
695 Justice Way
Indianapolis, IN 46203

DEPUTY DUNLAP
MARION COUNTY ADULT DETENTION CENTER
695 Justice Way
Indianapolis, IN 46203

14